We have four cases this morning. The first is numbers 19-3847 and 3892. Dansko Holdings Inc v. Benefit Trust Company. Mr. Bean and Mr. Hayes. Mr. Bean, you are first. Thank you, Your Honor. May it please the Court. I'm Richard Bean. I represent Benefit Trust Company and I would like to reserve, with the Court's leave, three minutes of my time for rebuttal. Not a problem at all. Thank you, Your Honor. This case involves Dansko and Benefit Trust Company's directed trustee trust agreement for the Dansko Employee Stock Ownership Plan. And this morning, in my opening remarks, I'd like to do three things. First, provide you a brief outline of the facts that apply to both appeals, both ours and Dansko's. Second, turn to the decision of the District Court on Dansko's motion for summary judgment on Benefit Trust's indemnity claim and discuss that. And third, then turn to Dansko's appeal from the grant of summary judgment for Benefit Trust on Dansko's claim. So turning to the material facts that are not at issue in this case, the Dansko Employee Stock Ownership Plan was created in 2011. One of the agreements or documents that were a part of that plan was the trust agreement between Dansko and Reliance Trust. Reliance Trust was appointed as a directed trustee. Dansko wore two hats, as is common and expected in ESOP transactions. One quick question is, why wasn't there a formal novation of that trust agreement when Dansko came in as the trustee? Well, it was a two-part agreement. Dansko had a board resolution substituting Benefit Trust Company as the trustee. That was on June 16, 2014. And the next day, Benefit Trust accepted that appointment as the substitute trustee. And the parties engaged in the trust agreement according to its terms as it existed when Benefit Trust was substituted. As to why... Yes, Your Honor. Could you talk a little bit about that 2014? Was that an amendment? Was that a novation? How should we understand the relationship to the original contract? It is, I think in the party's view and the testimony, almost a new agreement. So, a novation rather than... But it is a substitution and it could be viewed as an amendment, but all of the terms applied to both of the parties. It was not merged into the original agreement. We were substituted. Benefit Trust was substituted for Reliance Trust Company and had all of the duties, all of the rights, all of the responsibilities of Reliance Trust Company. In that one short page? Yes, Your Honor. I think that's what substitute means. And if it wasn't the case that we were substituted, then the trust under ERISA law would have failed. All of those terms had to be applicable. There's a difference between a substitution via amendment versus a whole new agreement. There was no integration clause in 2014, right? The only integration clause was December 30th, 2011, correct? The parties had negotiations prior to the substitution and the integration clause applies equally and appropriately to Benefit Trust Company. My question is, there is no document that was written after December 30th, 2011, that has an integration clause in it. Your position has to be that the 2011 integration clause is somehow reissued and re-entered into in 2014. That is correct by virtue of substitution. That is correct, Your Honor. Why can't the substitution happen via amendment? Why can't we just view that as an amendment that added you in? You could view it as an amendment, but we are the new trustee. Otherwise, the trust fails and a lot in the plan. If it's an amendment though, why should we read the integration clause as of 2014 rather than as of 2011? Because we are the new trustee and those negotiations would have been merged and all of the duties, rights, and responsibilities would apply to us equally. The trust agreement says, it talks about prior and successor trustees and their responsibilities. Are you now an original trustee or aren't you a successor trustee under the terms of that agreement? We are a replacement and successor trustee, but I think that's a distinction without a difference. But the point is, we look back to 2011 to understand who was the first trustee and the successor trustee. If we look back to that and the signature line on the agreement was dated 2011, why don't we look back to 2011 as the time of the integration clause? Because this was essentially a second agreement, a new agreement between these parties. But you're a successor trustee based on the original agreement. The original agreement doesn't go away. Otherwise, you wouldn't be a successor trustee. Well, let me ask, why wouldn't the integration clause apply? It certainly does and we briefed that. Maybe you're saying the same thing. You're saying that in 2014, you stepped into the shoes of your predecessor trustee, correct? Correct, Your Honor. And you adopted the 2011 agreement? That is correct, Your Honor. So there's no sense fighting whether it's a new agreement or something. It's the 2011 agreement. The only difference between the 2011 agreement and 2014 is you have  Okay. And so 9.4, which is your integration clause, is in the still applies to you just as it did in 2011. That's correct, Your Honor. All right. Let me turn to, I think we've covered most of it. The only other provisions, there is an amendment provision, as the court noted, 8.1. 7.3 provides for the appointment of a discretionary trustee in all matters related to stock. And then 9.10 is the advancement clause, which is consistent with the indemnity clause. So let's turn to the indemnity clause. Yeah. Pennsylvania law says that we need to strictly construe indemnity clauses, indemnity provisions. So nothing here explicitly covers first party claims. But Pennsylvania law also says that whether a loss is caused by a party to the agreement or a third party, the indemnity clause would apply. So unless a first party claim was excluded, this would be, the indemnity clause would be applicable. Also, What do you want from us on this? Do you want us to reverse or do you want us just to remand? I want you to reverse and enter judgment and remand for a determination as to the amount of damages that benefit trust is entitled to under the indemnity provision. But if you, doesn't the district court have to consider possibly parole evidence, which it hasn't considered? So why would that argue for a remand? The court wouldn't, the, excuse me, the integration clause would bar, would be, would address that issue. And the parole evidence would be barred because it would, if it was used to bury the terms of the agreement, for example, stuttered our witness and a former reliance trust officer and attorney who drafted the indemnity provision explained the scope of the indemnity provision and in doing so provided context, but not parole evidence. On the other hand, the evidence, uh, that might, that was suggested in the briefing by, uh, Dan's go is parole evidence because it attempts to vary the terms of the provisions. Stuttered explained the who, the what, the when, and the why, who is any party? What is any claim? Why is because the risks of being a directed trustee are far greater than the, than the remuneration for those services. That's why it's very broad. And the, when stuttered explained the claims at issue here were specifically intended to come within the scope of this indemnity provision. Uh, the court's construction, uh, we didn't argue it quite this way. It seems to be a result in search of a rationale. Uh, there was no reason to go on the tortuous search for provisions within other provisions outside the indemnity provision to explain why it might not be enforceable in this circumstance. And as to the question of whether this is a first party claim or a third party claim, uh, refer the court back to the two hats doctrine. If this was a, uh, first party claim, it would be a claim brought by dance co in its role as planned fiduciary and plan sponsor, not for itself, but for the benefit of all planned participants. That would be the only appropriate way to look at this as a first party claim. This is really a third party claim because Dan's co isn't seeking the images for the plan participants. Dan's co isn't acting in a representative capacity as a fiduciary claiming a fiduciary breach as to, uh, as to, uh, any act by benefit trust. It's seeking its own damages. So it is a third party claim if the court were to make that distinction. And what was signed in 2014 who signed it? Uh, it was signed by, uh, Mullen on behalf of, uh, no, that's not correct. It was signed by board. It was a board resolution. So I think Mr. Fox signed it. And, uh, uh, and another employee, Bradley scape of benefit trust company signed the acceptance. So it was the board resolution was on the, um, 14th of June or the 16th of June and benefit trust accepted it on the 17th of June effective on, uh, on the date of the board resolution. Let me get to the, uh, the, the fairness opinion. What was the reasoning for the, well, it looked like there was a, somebody saying that, Hey, we, we can do this. And then there was a decision made by benefit trust that we're not going to be in the, in the business of giving fairness opinions any longer. So what happened? Um, well, there were discussions about a possible refinance transaction at board meetings in September and December of 2014. There was no firm set of terms. There was no, uh, lender. There was no, uh, no final set of terms. And there were discussions where Mr. Kaplan, who was working with Dan's go for benefit trust company, uh, suggested how long it would take to do the kind of due diligence required for a trustee, but never accepted or never was asked until the December 9th board meeting, at which time Mr. Fox on behalf of the board and as president of the company asked benefit trust to engage as a directed trustee, but no terms were ever agreed to. There was no written agreement, which was required by 7.3 and benefit trust decline. Now, why your, your implicit question is, why did, why did this? Sorry, my timer. All right, no problem. Um, why, why did benefit trust get out of this business? The court may recall in the summer of 2014, the great bank decision, the process, uh, negotiations of the DOL and many trust companies exited the market reliance did. And even the, uh, trust company that was engaged by Dan's code to, uh, finish the transaction, which didn't close until June of 2015 and wasn't started until March of 2015. Uh, first bankers trust exited the market as well. Uh, the, the process, this, uh, settlement is the court knows changed the game for both discretionary and directed trustees materially changing the risk factors. And Mr. Bean, sorry, I just have one follow-up question on something we talked about earlier. Your brief asserts that a contract can't be amended to add a new party, but what authority do you have for that proposition? That an amendment can't accomplish that. I think earlier you were, we were talking and you said it didn't matter. I didn't know if you, if you were conceding that could be done by amendment or if you have authority that it can't be. Um, I don't have authority other than what would it that's fine. Um, if, if, if it's okay with my colleagues, I do want to ask you a question about a stopper. One of your alternative grounds on a stopper is that, you know, a stopper can only be based on an express promise. Is there any Pennsylvania law that supports that assertion that you need an express promise? Uh, we had federal cases cited in the, you have a, you have reports that other than a stated in the brief now of the, uh, all right. I think that answers your question. Thanks. Um, thank you, Your Honor. We'll get you back on rebuttal. to Mr. Hayes for Dan Scott. Good morning. May it, please. The court, can you hear me? Okay. Yes, we can. Okay. Thank you. Um, maybe just jumping around a little bit with respect to the questions on, uh, the application of the integration clause. Um, the integration clauses are temporal in nature. They only bar representations or, or other promises that were made prior to the execution of the agreement. And there's no question here that the trust agreement was executed in 2011 by reliance and, and Dan's scope. Uh, it wasn't until 2014 that, uh, in any way benefit became part of that transaction. So the, so the only thing that would happen in terms of the, the only effect of the integration clause would be to still have the effect of saying that any representations and warranties that were made before reliance and benefit executed the agreement, um, are barred. Wait a minute. Wait, wait a minute. What I don't understand you're saying that there was a 2011 trust agreement between reliance and Dan's scope. Correct. Three years later, reliance is out. Benefit trust is in. How can you argue now that only parts of the agreement are binding and parts are not The integration clause is still there, right? Well, assuming for the moment that the integration clause is still there, it is temporal in nature, and it only applies to representations and warranties that were made prior to the execution of the agreement in 2011. And we cited to the court two cases that held that as so held in the connection of an amendment. The first was the Pennsylvania Superior Court case, Dine Food Services versus DHS at Silver Spring Development. And in there in a court, I think it was a lease agreement in an amendment to the lease agreement. The party specifically restated the integration clause or re or re-recognize the integration clause in the original lease. Um, the, uh, one of the parties brought a claim saying that they were misled into entering into the amendment to the lease. Um, the other party claimed that that or those oral representations were barred by the integration clause, and the Pennsylvania Superior Court said it was not that the prior to this appeal. My point. What troubles me is prior to this appeal, did you dance? Go give any indication that the 2011 trust agreement didn't govern the relationship of benefit trust in any way? The that was there. There was. We're not saying that the truth that the amendment doesn't govern the relationship. What we're saying is if you take the integration clause on its face, at least it did for this point, we're saying if you take the integration clause on its face, all it does is apply to representations and warranties that were made prior to 2011. And Pennsylvania Appellate Court on Pennsylvania law, and I would see no distinction between an amendment and some type of a substitution of a party. The other thing I would like to say on that is that, you know, in a way, the district court let benefit had it both ways. You can't say that this is a new agreement and say that that then all the terms of the prior agreement are part there are included. And then at the same time, say that all that since it's that you still have to incorporate into the agreement all the terms of the original trust again. And what benefit doesn't acknowledge is that when the board resolution from dance go was that it would be to substitute trustee and that it would be part of the trust agreement dance and benefit acceptance of that was only stating to that is accepted as the trustee, it does not accept the offer that it'd be part of the original agreement. And that's three, page 399 of the appendix. So if you're going to say in the district court held that that exchange created the contract, if that's the contract, and that's the contract, and the parties apparently intended that the terms and conditions, at least as to the obligations and duties of benefit would be incorporated into that contract. But that's different than saying it's the same contract. Mr. Hayes, so you're now making a very textual argument. And yet, I don't follow. You don't seem to be as textual when it comes to trust agreement 9.9, the indemnification clause. Can I take you to that? I don't know if you have it handy, but open it up. I've got it in front of me. What language in 9.9 bars of first party indemnification? What how you define indemnity? Okay, show me where I'm looking at it. Where is it in this language? So the language there is no definition of indemnity. There is no definition you are there are no words in here that bar this claim. Well, there is no definition of indemnity. But the word indemnity appears in the agreement. Okay, so it's not a textual basis. You're saying indemnity has to mean or must mean something other than the first part, you have no, no text in 9.9 that supports this claim. Well, I guess I would disagree, Your Honor, maybe you don't need to the words in here, unless it's just the use of the word indemnity and indemnification. It is the use of the word indemnity. Okay, what about the word indemnity is inconsistent with the first party indemnity insurance policies give first party indemnities all the time. First, so I would because one is that this court is held in Longport Ocean Plaza Inc versus Robert Cato Associates, that indemnity clauses are typically seen viewed as third against third party claims. The court in that case acknowledged that a indemnity could establish extend to a first party claim. But in that circumstance, the court said you'd have to be very clear in agreement that that is intended. So and I so directly answering your question, Your Honor, that that's the basis. But the one thing that I would really would emphasize is this is not a first party claim. The typical first party claim is where A and B are parties to a contract. There's an indent B breaches and and B and that causes a damages. And so then a sues on a first party claim would be a suing be under the indemnity for the losses it sustained. What benefit trust here is wants us to indemnify us for our own claims. Now, Mr. Hayes, benefit did not draft 9.9. Did did you or your counsel draft 9.9? Because this was drafted before benefit was on the scene. This was drafted. According to the record, it was drafted by you were were you dickering over this language? I don't I don't recall the record anything that says that that we were dickering over this language. And I think Mr. I think actually, Mr. Bean referenced that Mr. Stoddard was a lawyer for alliance and he drafted at least. Do you know where in the record that is? I'm just curious. Mr. Stoddard, I don't. I can't I don't have that in my mind exactly where but it is in it is cited in the briefs, Your Honor. And so in that and it is not a it's simply not a first party claim. And what you're and I would submit that most parties would not understand that they were held to reimburse somebody as the case goes on for claims they assert against that there is you can't look simply at one clause of an agreement. Again, we cited the court as an example, Pennsylvania Supreme Court's case in Central Dauphin's school district that held you have to look at the entire claim. And what what what else in the rest of the agreement forecloses this if it's not just 99? If you we if you go through each of the provisions of those provisions that they would not have been written the way they are, if it was intended that this would extend to that to all first part to all to a claim that dance go brought against benefit. And when I get to some, can you point me to something in the text that's inconsistent? Yes, let me give you one example. For instance, there is for the in the advancement provision, it states what number is that? That is 9.0. Your Honor? What? 9.1? Okay, I said nine zero by mistake. But in any event, it provides that, for example, that only reasonable attorney's fees would be reimbursed. So if you intended this claim to extend to dance goes lawsuits against benefit, you would have had some provision in there that how you're going to deal with the reasonableness of the fees. As the court is, I'm sure is aware, you then what what you normally do is present the actual billing statements, and nobody would have contemplated that I would never want to be getting my billing statements to another party in the middle of a litigation. That's your best your best authority. Do you have anything else in the agreement requires benefit to give a notice to dance go of any claims asserted against it. And as the district court noted, that would not make any sense. Where, if in fact, this was intended to extend the claims that dance go was asserting against benefit because it's superfluous to make it that broad, but it's not inconsistent. What number provision is that? It's not 9.9. But it's nice. But it's part of 9.9. Part of 9.9. Okay. I can judge it more specifically. That's okay. That's okay. Let me just see if I get this right. 910 which says you got to give reimburse. And I think in advance ties into 9.9. So you have to claim under 9.9 and 9.9 requires dance go to indemnify benefit trust for all expenses reasonably occurred, defending litigation or any claim whatsoever relating to benefit trust duties as trustee. What duty as trustee is involved here that is alleged. The duty was be to undertake the fairness in that, you know, what I have been calling the you know, ease of reference, but basically to determine whether the restructuring was a in the best interest of the plan. And it's not so much a breach of duty, it's a defense that it was performed negligently. They just refused to perform it at all. So you don't dispute that the language any and all claims, damages, expenses, liabilities and losses whatsoever is about as broad as that phrase can be. You just you just think that it'd be absurd, or contrary to the purpose to not to read in a limit claims brought by other parties in essence? Well, yeah, yes. And add to that, Your Honor, that I focus on the meaning of the word indemnity and how it's commonly understood. And I again, with the third, that's how this this court, the Third Circuit has interpreted indemnity. And there is and by the way, there has been no case cited by benefit, where any indemnity clause of this nature was extended to a claim by the the alleged indemnity or against the indemnity. All right, so they've cited no case on that side. Have you cited any contrary case dealing with language like this? Well, we certainly not that specific language, but we have cited cases that interpret indemnity. All right. So in other words, neither of you has a case on this fact situation, we just have to figure out what it means is this is not a standard form that's been interpreted in this context before, right? One of the things I would I would even look though, just direct the court, for instance, benefit cites the Blacks Law Dictionary for the indemnity, the definition of indemnity. And that what they cite is to reimburse another for a loss suffered because of the third parties or one's own act. So while that's broad enough to cover third party and first party claims, it's not broad enough, their own definition is not broad enough to cover a claim by a by the indemnitor against the indemnity for the indemnity's own breach of contract. Let me ask you a question about your breach of contract claim. Is it your position that you only seeks to proceed on its claim for breach of the duty of good faith and fair dealing? No, no, Your Honor, we don't. We what we believe that maybe that was loose language, but that what was meant by that is just simply they were acknowledging that there is no expressed provision in the agreement that required benefit to perform the that specific analysis. And what they argued in their brief is that that duty arises under the contract by reason of the applied duty of good faith and fair dealing. And we cited to the court, for instance, where they actually said that their main claim is for breach of contract. And you wouldn't, on one hand, say that's my main claim, and then dismiss the agree that that claim is no longer you're not asserting it. So and I would also look at the fact that both the allegation as to the breach of the implied duty of good faith and of expressed provisions of the contract were set forth in the same count of the claim. And in their brief, they argued that if you and we cite to the app in our in our brief that they argued that if you under the by duty of good faith and fair dealing, that the that obligation exists under the contract. I mean, they specifically argued the point that the implied duty of good faith and fair dealing creates an obligate not creates an obligation, but imposes duties that ought to be it fills in the interstices of the agreement to fully flesh out the duties that the party has under the under the contract. And so I don't I think you just wouldn't assert a claim, and then at the same time, wait, waive it, or adopt an argument to put you out of court that they weren't, they were making express factual admission, but they were they were not withdrawing the entire claim that had been asserted the theory of of action. And so I think, with due respect to the district court, that it shouldn't have a little bit of jumping there. And to try to throw Bansko out of court on its breach of contract claim. I would submit that I didn't write the underlying brief. So looking at it afresh, it just didn't doesn't seem that that's what was intended. Mr. Hayes, could you talk a little bit about C&K? We have this oddity where your opponent can't cite any Pennsylvania cases about express promises, but we have this, this language from C&K a while back that some district courts are relying on. What's your, what's your position on that? Is it dictum? Is it distinguishable? So I do think it is dictum, but I would also say that it is distinguishable, Your Honor, because for a number of reasons. First and foremost, this was a trust relationship. Benefit acted as a fiduciary. And I would submit to the court that the rules that you apply in a commercial transaction, for instance, saying, you know, if you're negotiating the contract and you have, you think something's important to you and you don't put it in the contract, that's on you, not on the other party. But that's a little different when you're talking about a trust agreement. I secondly would submit to Your Honor that it is distinguishable in the extent that we, the promissory estoppel claim is not based on pre-contract negotiations. It's all actions taken after the contract was signed. And I would also say that I believe that in fact, the obligation to perform the fairness analysis was within the scope of the obligations. And in fact, beyond that, I mean, Mr. Kaplan testified under oath, and at least at the time he was, he was benefits rep, not at the time of deposition perhaps, but it certainly at the time that he was involved in this, he was benefits representative. And he said, I understood we were going to prepare the fairness analysis. But how can you have a promissory estoppel claim when you have a contract? Well, because it is, one is because of the, it is relates to activities after the contract was agreed to. And two, because it is a trust relationship. And three, where the cases and other jurisdictions have held, you must have an express promise where the existence of a contract bars the claim. It was clear that that representation is not in the agreement. We're here, it's, that's not clear at all. I mean, we think that that the court should read the agreement to extend to that. But even if the court disagrees with that, it certainly is not clear whether it is or it isn't. So when you have your, your trustee, I mean, someone who has fiduciary obligations to you and the plan saying we're going to do this, you're entitled to rely on that. Because the trustee has the utmost duty of candor. And it was not just this little, it was six months of activity. And I would also submit to the court that regardless of what the third circuit says and seeing K in that dictum statement, I don't think that that dictum statement was intended to foreclose where someone's whole course of conduct. I mean, under the law, we recognize conduct can be the same as words. And if you're saying I'm going to do the analysis, you participate in all the preparatory meetings, give advice and saying, hey, I think the owners are going to have to take a haircut on their warrants. You're, you're leading up to it. And you don't say one word to ever suggest that you're not going to perform that analysis. I would think that you should then be barred from, I would submit to the court, you should then be barred from saying you're not. And the other thing I would just, just how, how long was the delay once you found out the benefit trust was not going to give the fairness opinion until you, until you closed the refinancing? I believe it was between four to six months, if my recollection is correct. And so, and clear. And the other thing I would say is, it's just, when you look at it, it doesn't make any sense. I mean, here, you think about it in 2014, we're hiring or a new substitute trustee. We know we're going to do, or at least have plans to do the restructuring. We know we need a, the trustee to render what I call the fairness opinion. Well, normally a fairness opinion, at least in the world that I once lived in, normally you get a fairness opinion, either from an investment bank or perhaps an accounting firm, but not normally from a trustee. So, and, and I recognize I use that shorthand, but as I understand the process, what you need is the trustee to, to ultimately render the opinion that the restructuring is in the best interest of the plan participants. Now we will go out and get a fairness opinion from, from the, from the, I believe a banker, and it will use that as one of the facts on to base its, its ultimate conclusion. And so instead of just saying, I just use fairness opinion as just kind of a shorthand for that, that, that, that rendering that ultimate opinion. And it just, you wouldn't have done that if you thought that the person, the entity you're hiring is not going to do that analysis, because now you've got to go out and get somebody else. You settle on your substitute, pardon me, trustee, and then you have to go out and go get a whole other trustee. I just don't think. So, so what, what, what relief are you asking from us? We're asking the court to reverse on it. Well, first off to affirm on the counter on the, on benefits. I understand that. Okay. And then to reverse on, on the breach of contract, the promissory estoppel and the fraud claims and to remand for a trial. And I will, I maybe the court would like me to sum up at this point, which is basically, I would submit to the court that all the issues we've been arguing as to what they, what parties understood whether it was reasonable for, for, for Dansko to rely on, on benefit, whether benefit committed to those types committed to do the analysis in question, whether we were, whether Dansko was completely misled by this, by, by the, uh, to even engage that Dansko by reason of its express representations. And you don't get too many fraud claims where the defendant admits that they made misstatements. Uh, all of those questions, your honor, I submit are for a jury that can be decided after a full trial on the merits. I thank the court for that. Thank you, Mr. Bean. Uh, thank you, your honor, just a few things and I'll try to fill in some of the blanks of, from my argument and from, uh, Dan's cause argument as to stuttered testimony, your honor, that appears at pages 29 and 30 of our opening brief. It's in the appendix at 2 58 and 2 59. And we quote, uh, the, his discussion of 9.9 and 9.10 in the brief in full. Well, not in full, uh, at least that part of his testimony about it, uh, as to the issue of waiver that was raised in the questioning, that is our position, the existence of, well, the, the language that, uh, Dan's code used was not inadvertence and it didn't maintain the contract argument. And the reason that the other thing that supports the language that, uh, the district court quoted in twice at pages six and seven of the appendix is their failure to respond to any of our contract arguments in their opening brief. They knew they were going to lose that argument. They admitted those facts in the statement of facts as we cited in the appendix, they waived their breach of contract claim. And by waiving that it's fatal to their second claim, breach of the covenant of good faith and fair people. Uh, council has made much of our, uh, benefit trust role as a trustee and it's fiduciary responsibility. And the answer to that is to whom it is not a fiduciary to the settle or it is a fiduciary to the plan participants. And it took no act in derogation of the plan participants rights. If it had then dance go at wearing its other hat, wearing its plan fiduciary hat would have had an obligation to bring claims on behalf of the plan participants. If there were damages to the plan and there weren't any judge ambrose to your question about delay. Here's the timeline. December the ninth benefit trust gave notice to dance go that it was not going to be able or it was not going to accept an appointment as a discretionary trustee dance go did nothing until january and in january after the holidays it began interviewing companies to replace benefit trust. Benefit trust was replaced in mid february by first bankers trust, but that agreement was only for directed trustee agreement. First bankers trust was not engaged separately as a discretionary trustee until mid march and the and so the delay period was much much of the delay was a dance goes on doing and then benefit or first bankers trust got to work on in its discretionary trustee capacity in march and the transaction closed in mid june of 2015. That's the that's the timeline. My time has expired. I thank you very much for the opportunity to argue this case. Thank you, your honor. Thank you to both council and we'll take the the matter under advisement. Thank you. Thank you. Might I request a transcript? Yes, you certainly may council if you would have transcript prepared and just split the cost. We will do that, your honor. All right. Thank you very much.